11745. WESTERN & ATLANTIC RAILROAD CO. *v.* WHITE.

LUKE, J. The presumption of negligence, which arose against the defendant railroad company when it was shown that the dog for whose death the

plaintiff was suing had been killed by the running of one of the defendant's trains (*Seaboard Air-Line Ry.* v. *McDonald*, 19 *Ga. App.* 627 (91 S. E. 1053), was completely rebutted by the uncontradicted testimony of the company's employees who were operating the train, and the verdict in favor of the plaintiff was contrary to law and the evidence, and the judge of the superior court erred in overruling the certiorari. The request that the decision in the *McDonald* case, supra, be reviewed and overruled is denied.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED JANUARY 25, 1921.

Certiorari; from Bartow superior court — Judge Tarver. June 19, 1920.

The engineer's testimony as set out in the petition for certiorari is "approved" in the answer of the justice of the peace who tried the case, "as being substantially quoted," except as indicated below. It appears that the engineer testified in part as follows: · "On the occasion when my engine struck the dog I was coming northward, approaching the trestle at a speed of about 30 miles per hour, and was looking ahead. My engine had a good headlight on it, and I had a heavy freight-train consisting of about 30 cars. Going north approaching this trestle the track is down grade to the trestle, . . the engineer's side of the engine is on the east and the fireman's on the west. South of the trestle the track runs, coming north, in a west or slightly northwesterly direction, and then bends to the right and goes across the trestle about due north. The curve on the track is south of the trestle about 100 yards; that is, coming northward the track does not straighten out until a point 100 yards south of the trestle is reached. The track is straight for a distance of 100 yards south of the trestle. On an engine at night the headlight always shines directly ahead of the direction the train is coming, and on a curve the headlight shines out away from the track, and will not show an object on the track until the engine gets on the straight track. My fireman never could have seen an object on the trestle, because he was on the west side of the engine, which is the outside of the curve, and, by the time the engine got on the straight track so that the headlight would shine on the trestle, the front end of the engine would hide his view so that he could only see the west side of the trestle. A headlight is focused so that the light is concentrated on the rails when the track is straight ahead, and on a

straight track it will not show an object any distance outside of the rails. On account of the headlight always shining directly ahead of the direction the engine is running, and on account of the curve in the track south of a point 100 yards south of this trestle, I could not see any object, on or approaching the trestle, on the track, until I reached a point 100 yards south of the trestle, and then I could not see any object until it came up on the end of the cross-ties. On this occasion when my engine struck the dog at the trestle I was looking ahead and did not see the dog on or near the track when my engine first came on the straight track, and when my engine got very near the south end of the trestle the dog jumped on the track, just at the south end of the trestle. My engine was then about 100 feet of the trestle." The magistrate's answer to the certiorari states that according to his recollection this witness testified that " the dog came upon the track from the east side, a few feet south of the trestle, about 100 feet from the approaching train." " As soon as the dog jumped on the track I opened the cylinder-cocks on my engine to frighten the dog off. The cylinder-cocks when opened make a loud hissing sound down on the front end of the engine on each side. This is a better way to frighten dogs off the track than blowing the whistle, because when the whistle is blown they are very apt to stop and look back, while the opening of the cylinder-cocks frightens them away from the track. For this reason I did not blow my whistle at the instant when the dog came on the track. I made no effort to slacken my train when the dog came on the track, because I was running about 35 miles an hour, and the dog was not over 100 feet ahead of me, and I did not have time to even try to slacken the speed of my train, because I was so close on the dog. If I had tried I could not have slackened the speed any before I struck the dog. . . The public does not use the track at and near this trestle as a walkway, and animals are not often upon the track thereof. I can not now remember to have ever seen one there before. My engine struck the dog about midway of the trestle, on the east side of the trestle, and knocked the dog north of the trestle and east of the track. . . There was nothing that I could have done to have avoided the striking of the dog other than what I did do in opening the cylinder-cocks. . . The headlight on an engine is focused so that it does not strike the ground

so as to show an object on it until about 50 feet ahead of the engine. There is a glow from the engine, but not distinctly enough to show an object as small as a dog any closer than 50 feet ahead of the engine." The engineer and the fireman testified that on this occasion the engineer blew a crossing-signal at the whistle-post 495 feet south of that trestle. The fireman testified that he did not see the dog, and could not have seen it, for the reason stated in the engineer's testimony.

*Tye, Peeples & Tye, Neel & Neel,* for plaintiff in error.

*C. C. Pittman,* contra.